Byron **NICHOLSON** and Phyllis Cary Nicholson, Appellants,

v.

**FIRST PREFERRED INSURANCE COMPANY, Appellee.**

No. 9271.

Court of Civil Appeals of Texas, Amarillo.

June 17, 1981.

Rehearing Denied July 15, 1981.

Bill Wischkaemper, David Martinez, Lubbock, for appellants.

McCleskey, Harriger, Brazill & Graf, Mike Worley, Lubbock, for appellee.

DODSON, Justice.

Byron Nicholson and wife Phyllis Nicholson (the "Insureds") brought this action against First Preferred Insurance Company (the "Insurance Company") under their homeowner's policy with the Insurance Company. In their action, the Insureds sought to recover for damages to their dwelling, its contents and their dragster race car. The damages resulted from a fire at the dwelling. The property insured under the policy includes the "dwelling" and certain "unscheduled personal property." Under the "unscheduled personal property" coverage provision, motor vehicles are excluded. However, the term "motor vehicles" is not defined in the exclusion provision. After a bench trial, the court rendered judgment that the Insureds recover the amount of $2,583.74 as damages to the dwelling and some of its contents. Concluding that the dragster race car "was and is a motor vehicle", the court denied the Insureds' claim for damages to the car. Each of the parties appeal from the judgment. Finding no reversible error, we affirm the judgment.

The evidence shows that the Insureds' car is modified and designed exclusively for dragster racing. They converted a stock, 1972 Chevrolet Vega into a dragster by removing the suspension and replacing it with a subframe, by placing "racing slicks" on the car which are illegal for ordinary highway driving, by placing a racing engine

in the car with a life of only 20–25 miles or two minutes of operation, by placing an oversized oil pan on the car, and by removing the windshield wipers, the lighting system and the horn. The car was not and could not be registered for public highway transportation. Furthermore, it would be highly impractical to use the car for ordinary, transportational purposes.

On or about 28 April 1978, Insured Byron Nicholson was working on the car in his garage, attempting to reroute the fuel line. The special, high-octane fuel used for the car leaked onto a lighted work lamp. The lamp ignited the fuel and caused a fire. Portions of the garage, the house, and its contents suffered fire and/or smoke damage. The car was also damaged. The Insureds filed a sworn, proof-of-loss statement with the Insurance Company. The Insurance Company denied the claim and this action ensued.

The pertinent policy provision is:

PROPERTY INSURED

\*　　\*　　\*　　\*　　\*　　\*

COVERAGE B—UNSCHEDULED PERSONAL PROPERTY owned, worn or used by the Insured, including members of his family of the same household and, at the option of the Insured, property of others (except roomers or tenants) while on the premises of the described dwelling. Window or wall air-conditioning units shall be considered personal property.

EXCLUSIONS—Coverage B does not cover:

a. Animals and birds; aircraft; *motor vehicles*, except power mowers, golf buggies and farm equipment not designed for use principally on public roads; trailers and semi-trailers, except such vehicles (other than house trailers) designed for use principally off public roads and except boat trailers while on the premises of the described dwelling. (emphasis added);

\*　　\*　　\*　　\*　　\*　　\*

The insureds bring one point of error. By this point, they claim the judgment should be reversed because the trial court erroneously concluded that a dragster race car is a "motor vehicle" within the ordinary and usual meaning of the term, particularly since the insurance contract should be construed in a way to indemnify against loss.

In regard to this point, we are aware that the construction of undefined terms in insurance contracts is governed by two major principles. First, the terms used are given their ordinary and generally accepted meaning unless the policy shows that the words were meant in a technical or different sense. *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex.1979). Second, if the term is ambiguous and susceptible to more than one interpretation, then that construction which affords coverage will control. *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977); *Transport Ins. Co. v. Standard Oil Co. of Texas*, 161 Tex. 93, 337 S.W.2d 284, 288 (1960).

In support of their position, the Insureds contend that a motor vehicle is a device that is self-propelled and transports persons or property upon roads or public highways, and that their dragster is not designed for or used to transport persons or property on a public highway. For their definition of "motor vehicle," they rely on *International Ins. Co. in N. Y. v. Hensley Steel Co., Inc.*, 497 S.W.2d 64 (Tex.Civ.App.—Waco 1973, no writ), where the court stated:

We think the plain, ordinary, and generally accepted meaning of the word "motor vehicle" is a self-propelled vehicle designed for, intended to be used for, or actually used to transport persons and property *over roads or highways*. (emphasis added).

*Id.* at 66.

The Insureds further urge us to adopt the definition of "motor vehicle" contained in Tex.Rev.Civ.Stat.Ann. art. 6675a–1(a) & (b) (Vernon 1977) (Regulation of Vehicles). That provision states:

The following words and terms, *as used herein*, have the meaning respectively ascribed to them in this Section, as follows:

(a) "Vehicle" means every device in, or by which any person or property is or may be transported or drawn upon a public highway, except devices moved only by human power or used exclusively upon stationary rails or tracks.

(b) "Motor Vehicle" means every vehicle, as herein defined, that is self-propelled. (emphasis added).

Under this provision, a "motor vehicle" would be limited to *self-propelled devices used to transport persons or property upon a public highway.* The Insureds also refer this court to the same definition contained in Tex.Rev.Civ.Stat.Ann. art. 6701d, § 2(a) & (b) (Vernon 1977) (Traffic Regulations).

■ Notwithstanding the common definition given to the term "motor vehicle" in the *International Ins. Co.* case and by the statutes, we are persuaded that the Supreme Court's opinion in *Slaughter v. Abilene State School,* 561 S.W.2d 789 (Tex. 1977), is controlling of the definition we must apply in this instance. In *Slaughter,* the court was asked to determine whether a farm tractor was a "motor vehicle" within the purview of the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Vernon 1970; Vernon Supp. 1980–1981). 561 S.W.2d at 791. Since the Act did not define "motor vehicle," the Court held that the term "must be construed according to its ordinary import or as the phrase is generally defined." *Id.* The Court concluded: "Common usage has made the phrase 'motor vehicle' a generic term for all classes of self-propelled vehicles not operating on stationary rails or tracks...." *Id.* at 792. After referring to and quoting the definition of "motor vehicle" contained in Tex. Rev.Civ.Stat.Ann. art. 6675a–1(a) & (b) (Vernon 1977), the Court held that definitions of "motor vehicle" elsewhere in the Revised Civil Statutes were not conclusive as to the term's meaning under the Texas Tort Claims Act. *Id.* Likewise, we conclude that common usage has made "motor vehicle" a generic term for *all classes* of self-propelled vehicles used to transport persons or property and not operating on stationary rails or tracks. In this instance, the race car—obviously being self-propelled

and used to transport a race car driver (albeit on a private dragstrip)—is a "motor vehicle" and is therefore excluded from coverage under the policy. Furthermore, we conclude that, as a matter of general definition, the term "motor vehicle" does not admit to any reasonable ambiguity that could be resolved to afford coverage under this policy. Accordingly, we overrule the Insureds' first and only point of error.

By two cross-points of error, the Insurance Company contends that the trial court erred, as a matter of law, in failing to find: (1) that there was no coverage for any loss under the policy because maintaining the race car sufficiently increased the hazards to avoid liability on the policy; and (2) that the policy was voided by the Insureds' engaging in a business pursuit on the premises in contravention of their declarations in the policy. After reviewing the probative evidence in the record, we conclude that the Insurance Company failed to prove either of these propositions as a matter of law. *See Shop Rite Foods, Inc. v. The Upjohn Company,* No. 9231 (Tex.Civ.App.—Amarillo, June 10, 1981) (on motion for rehearing).

■ The policy in question states that the Insurance Company *may cancel* it if there is an "[i]ncrease in hazard within the control of the insured which would produce an increase in rate." The context of this provision is such that cancellation is optional with the Insurance Company and not a condition subsequent which will avoid liability. Nor does it appear to create an exclusion from coverage. *Contra, Knoff v. United States Fidelity and Guaranty Co.,* 447 S.W.2d 497, 500–01 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). Rather, in its first amended original answer, the Insurance Company alleged that maintaining the race car was an increase in hazard on the insured premises, "and had the company known about this increase in hazard on the insured premises, the policy would surely have been cancelled. The only reason this policy was not cancelled is because this material increase in hazard was not made known to the company." A thorough re-

view of the record shows that there is not even a scintilla of evidence that the insurance company would have cancelled the policy had it known that a race car was being maintained on the premises. Furthermore, the evidence that a race car was being maintained on the premises and that the car contained a special, high-octane fuel falls short of conclusively establishing that there was a sufficient increase in the hazard as would require an increase in the rate. At most, the evidence creates an issue for the fact-finder. Again, we find no evidence that the Insurance Company would increase the rate because a race car was being maintained on the premises.

In the policy, the Insureds declared that there were no business pursuits conducted on the premises. The Insurance Company contends that it conclusively established that the Insureds were pursuing a business on the premises, by maintaining the race car, in contravention of the policy declaration. Although the evidence shows that the Insureds maintained the car on the premises and raced it with "the eternal expectation of someday winning" prize money, Insured Phyllis Nicholson definitely testified that neither she nor her husband were in the commercial business of racing, that it was "mostly hobby," and that Insured Byron Nicholson did not work on anybody else's race cars in the garage and get paid for doing it. The evidence falls short of conclusively establishing that the Insureds pursued a business on the premises in contravention of the policy declaration. Accordingly, we overrule the Insurance Company's first and second cross-points of error.

In summary, we overrule the Insureds' point of error and the Insurance Company's two cross-points. The judgment of the trial court is affirmed.