[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Gordon Muir Foley for plaintiff.
Moller Horton Shields for defendant.
This is an action by the plaintiff insurer seeking a declaratory judgment to the effect that certain provisions of its Homeowners Insurance Policy issued to the defendant respondent, the insured, preclude or restrict coverage for the insured's fire loss.
The loss occurred on July 23, 1991 when a certain detached garage on the insured's residence premises were struck by lightning, causing a fire which destroyed the garage and items of personal property located within the garage.
The garage was used primarily to house a certain car CT Page 8230 which the defendant raced on the weekends. Much of the personal property in the garage was used for maintenance and repairs to this auto, referred to as a pro-stock car, which is an assembly line car with modification so that the chassis is modified to travel around left hand turns.
The plaintiff insurer claims that because the defendant can and does at times receive cash prizes at races; that he does have a hope of making a profit; that he does take a tax deduction for expenses to the extent of the prize money; and that some business parts vendors provide automotive equipment to the defendant for use on the racing car, in exchange for displaying their name on the car, this activity consists of a "business".
The policy provides an exclusion for structures used in whole or in part for business, and a limitation of $2500 for personal property on the residence premises used at any time or in any manner for any business purpose. The policy states "`business' includes trade, profession or occupation." The parties stipulate that if the business exclusion/limitation is applicable the insured's entitlement is $2500. If it is not applicable, the entitlement is $36,782.
The following further facts are found. The defendant is employed full time as a warehouse manager for Eastern Paper Company and has been employed at that company full time for approximately seventeen years, which appears to be most of his adult life. He has been racing cars for many years. He races the car on the weekend, and spends many evenings, after work, maintaining the automobile. This automobile requires frequent maintenance and repairs due to the incidence of trauma and stress which this activity places on the auto.
The defendant considers the activity to be a hobby, which provides both personal challenge and recreational distraction from what appears to be routine, and certainly a full time occupation of warehouse work. The prize money has never come close to the expenditures necessary to maintain the car. For example, in 1991, which is typical, he won $2,353 in prize money as against the expense of approximately twelve thousand dollars per year to maintain the car. Income for 1992 and 1993 were similar, again as CT Page 8231 against approximately $12,000 per year maintenance costs. His earnings from his full time job are approximately $33,000 per year which allows him to afford this recreation activity. The racing gross income must be reported to the Internal Revenue Service, and, per his accountant's instructions, he takes and is allowed to take as a deduction expenses up to the gross income, and no more, due to the IRS "hobby rules".
The race tracks in which he races are local — Stafford, Riverside, and occasionally Thompson. His helpers, "crew", are all volunteers, non paid, who, as well as he, help out for the love of the sport. He has no sponsor. He accepts some parts and the like from suppliers in exchange for displaying their name on the car. He receives no cash subsidy from anyone. He, like most amateur sportsmen, would like to make some financial profit from racing, but he is sufficiently realistic to know that this is not going to happen, bearing in mind the history of very modest accomplishments over these many years. He would have to win almost every race just to break even, and there is no prospect of that happening. The court credits the testimony of the defendant that he engages in this activity for the love of the sport and with no expectation that he will ever make a profit in this recreational activity.
The insurance policy states "business includes trade, profession or occupation". The policy does not contain an exclusion for activities conducted as a hobby or recreation or pastime or the like.
These are no Connecticut cases which attempt to define or interpret these terms, which, in reviewing cases outside this jurisdiction, appear to be a common provision of this type of insurance policy.
The case of Guaranty Insurance Company v. Duncan,206 S.E.2d 672, 674 (Ga.App. 1974) deals with a near identical set of circumstance to that presented in the instant case. There the Court was also dealing the spare time auto racing interest of the insured. ". . .: `Trade' is the `the business one practices or the work in which one engages regularly'; `profession is the occupation to which one devotes oneself'; and `occupation' is `that which CT Page 8232 occupies, or engages the time and attention; the principle business of one's life'. None of these would include the spare time racing interest of the insured, who was gainfully employed as a full time mechanic, that being his trade, profession or occupation."
In a similar set of circumstances the Texas court inNicholson vs. Preferred Ins. Co., 618 S.W.2d 560, 564
(Tex.App. 1981), determined that the racing of a vehicle which it categorized as "mostly hobby" was not the commercial business of racing, also noting, as in the instant case, that the insured "did not work on anybody else's race car in the garage and get paid for it."
The defendant further calls to the Court's attention that Section 183 of the Internal Revenue Code of 1954, as amended, deals with this issue for the purpose of determining whether excess expenses are allowed as deductions from gross income. The Code provision, set forth as Section 183(d), has taken on the vernacular name of the "hobby rules" in the dialogue of person who have a particular and special interest and expertise in the field of income taxation — accountants, tax attorneys and the like.
The rule is designed to preclude persons who engage in an activity as a hobby, but which generate some income, from claiming deductions in excess of income for the purpose of offsetting excess hobby expense against income from other sources. It is obvious that the rule is designed to preclude abuse by persons engaged in a hobby from utilizing hobby expenditures which exceed income as deductions against the income from that person's bona fide business activity. Business activity in a free economy is in the public interest, enhancing competition and hence resulting in lower consumer prices, and is encouraged by allowing excess deductions (advertising, depreciation and the like) to encourage entrepreneurship; while hobby activity lacks that characteristic of advancement of general welfare of the community, which financially benefits from general business competition. Hence the IRS "Hobby Rules".
The defendant cites the tax court case of Day L.Schlafer, 90, 066 PH MEMO TC concerning the maintenance of CT Page 8233 a racing car for racing activity. Here the taxpayer attempted to take excess deductions for a racing activity. The petitioner argued that because he was in the automobile sales business the racing activity, which advertised his business, should be considered a part of his sales business. The Court found that the race activity was an activity separate and apart from the auto sales, had no bona fide objective of profit, no potential of asset appreciation, and was in fact conducted for personal or recreational purposes. Although one may escape the application of the "hobby rule" if gross income exceeds expenses in three of five consecutive tax years, giving rise to presumption of "activity engaged in for profit" yet hobbies such as that of the defendant, generating no appreciation of assets, no profit at all, ever, cannot so escape the "Hobby Rules". The defendant's advice, from his accountant, as to "hobby", for taxation purposes was absolutely correct.
This Court is not bound by the IRS hobby rules in arriving at this decision. However, the Court acknowledges that it is proper to take into consideration both the Internal Revenue Code, the Tax Court opinion, and the decisions of out of state jurisdictions in determining an interpretation of this contract provision which appears to have a somewhat standardized national terminology, and which is clearly allied to the very question sought to be dealt with by the IRS hobby rules.
The rules of law are clear as to the interpretation of insurance policies
 "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language in the policy.
 Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 712
(1990)
The court is in agreement with the interpretation of the words "trade, profession or occupation" as is articulated inGuaranty Insurance Co. v. Duncan, supra. CT Page 8234
The words "trade" and "profession" have a common meaning of an enterprise which is engaged in for profit and financial enhancement. The word "occupation" cannot be construed to be an all encompassing term to denote any and all things which occupies a person's time. Such a definition would no have no common sense application as pertains to this contract. Most leisure time activity, including watching television occupies one's time. This Court agrees with the interpretation of the phrase "occupation" as set forth Guaranty Insurance Co. v. Duncan, supra, as being the principle business of one's life in a commercial sense.
The Court further understands that it is not uncommon for persons to engage in hobby and recreational activities which produce some income. It is not uncommon that recreational amateur athletes, musicians, recreational picture painters and the like often receive modest stipends for those activities in off hours, away from the pursuits of the gainful business of their lives. The interpretation of the policy sought by the plaintiff would implicate the coverage for large numbers of the citizenry who practice or hone their skills at home, or who store musical instruments or athletic gear or canvas and water colors in their homes. Such interpretation of the policy would be patently unreasonable.
Even "Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted". Schultz v. Hartford Wine Ins. Co., supra, P 702. Had the plaintiff desired to exclude from coverage all structures used for any hobby purpose which produces any income it could and should have done so by appropriate and specific policy language. Had the insurer wished to limit its liability for hobby maintenance or repair equipment which is used to maintain hobby equipment which generates some income, (as the policy otherwise does for special items such as money, securities, passports, stamps, or the like,) or to "premium rate" hobby or recreational equipment on a special premium basis, it could have done so. (Subject to the Regulatory provisions of General Statutes 38a-305 to 38a-358.) The automobile itself and equipment and accessories affixed to the auto itself are specifically excluded by the motor vehicle exclusion of the policy and are not the subject of this CT Page 8235 action.
The fact that this particular hobby or recreational activity required more expensive maintenance equipment than is usually required for the other types of hobby or recreational activity does not alter the court's conclusions.
Assuming, arguendo, that such a policy exclusion for hobby activity would satisfy the requirements of regulatory authorities, it is further obvious that such exclusions, involving substantial numbers of members of the public who do receive some compensation for hobby or recreational activities, would certainly reduce the attractiveness of that insurer's policy in a highly competitive casualty insurance market. The failure to specify hobby activities which produce some income as policy exclusions is totally understandable from a commercial standpoint.
For the reasons set forth herein, the Court having heard the parties, finds the issues for the defendant. Whereupon it is adjudged and decreed as a declaratory judgment of the rights of the parties that the maintenance and use of the racing car is not a business, that the structure was not used in whole or in part for business and that the personal property was not used at any time or in any manner for any business purpose. No costs shall be taxed in favor of either party.
L. Paul Sullivan, J.