**STATE FARM LLOYDS and State Farm Fire & Casualty, Appellants,**

v.

**Ronald MOWER and Marilyn Mower, Appellees.**

No. 01–91–00216–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 9, 1993.

Dissenting Opinion by Justice Cohen March 31, 1994.

Richard L. Josephson, George T. Shipley, Kevin M. Jordan, Houston, for appellants.

Kirk Purcell, Ralphaell Wilkins, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and COHEN and O'CONNOR, JJ.

## OPINION ON MOTIONS
## FOR REHEARING

OLIVER–PARROTT, Chief Justice.

Appellants' motion for rehearing is denied. Appellees' motion for rehearing is granted.

Our original opinion is withdrawn, and this opinion is substituted in its place.

This appeal arises from an insurance case in which the appellees', Ronald and Marilyn Mower (the Mowers), house burned down. State Farm Fire and Casualty Company (State Farm), the appellants, were the insurer of the house. State Farm refused to pay the policy limit of $175,000 because it claimed the house was not a total loss. At trial, a jury determined that the Mowers' house was a total loss. A second trial was held to determine if State Farm violated its duty of good faith and fair dealing by not paying total loss benefits. The jury held that State Farm did violate this duty, and awarded the Mowers $50,000 for mental anguish and $5,000,000 in punitive damages. State Farm appeals from both of these jury verdicts.

In 1985, the Mowers purchased a new house from Oren Hudnall (Hudnall), a custom home builder. The house was financed by First Federal Savings Association (First Federal), with Hudnall loaning the Mowers $5,000 for closing costs. As mortgagee, First Federal held a first lien on the home, and Hudnall held a second lien.

When the Mowers purchased their home, they purchased a Texas homeowners insurance policy from State Farm. First Federal is a loss payee on this policy. Under the policy, State Farm is obligated to pay the Mowers or First Federal for damage to the home. The policy has a face value of $175,000 for the dwelling, $105,000 for unscheduled personal property, and $36,000 for additional living expenses.

On March 16, 1986, the Mowers' home was involved in a serious fire. State Farm assigned Greg Barnhill (Barnhill), an independent adjuster, to investigate the Mowers' case.

On March 18, 1986, Barnhill spent four hours conducting an on-site investigation of the Mowers' house. Barnhill concluded there were usable remnants that could be used in reconstructing the house, namely the garage and the slab. Although there were usable remnants, Barnhill believed that the cost of reconstructing the Mowers' house would exceed the $175,000 policy limit. Based on this belief, Barnhill recommended that State Farm's reserves for the Mowers' case be set at $175,000. When Barnhill made this recommendation, no repair estimates had been obtained. His recommendation was based on his opinion that the reconstruction cost would exceed the policy limit. On March 24, 1986, Charlie Owens (Owens) of State Farm set the reserves for the Mowers' claim at $175,000 based on Barnhill's initial recommendation.

A few days after the fire, Mr. Mower requested bids to rebuild his home from Hudnall, the original builder, and Keith Stewart (Stewart), a contractor specializing in reconstruction of fire damaged homes. Hudnall submitted a bid of $88,139 and Stewart a bid of $85,900 to totally reconstruct the Mowers' home. Hudnall would not guarantee the slab. Both estimates expressly stated that the slab and garage remnants would be used in the reconstruction. With these two bids that explicitly contemplated the use of the remnants of the house, Barnhill concluded that the Mowers' house was not a total loss. On June 19, 1986, he recommended to State Farm that they offer the Mowers the amount of the higher bid.

On June 17, Bill Philleaux (Philleaux) of State Farm assumed responsibility for the Mowers' claim from Owens. Philleaux received Barnhill's recommendation and concluded that it was correct. Philleaux's conclusion was based on the photographs of the house after the fire, Barnhill's inspection, and the repair estimates that included the use of the remnants. Based on the decision that there were usable remnants and the fact that the reconstruction cost was about $90,000, Philleaux met with the Mowers on July 8, 1986, and offered to accept Hudnall's bid. The Mowers refused this offer.

On July 24, State Farm reduced the reserves for the Mowers' claim to $90,000. On August 1, Barnhill repeated State Farm's offer of $90,000 to the Mowers. The Mowers

rejected this offer on August 27. The Mowers submitted a counteroffer of $104,000, which was based on the payoff of their mortgage that had been accelerated and was due in full because the Mowers had stopped making their mortgage payments after the fire.

On October 31, State Farm notified First Federal, the other insured on the policy, that it had offered $90,000 to pay the claim. First Federal informed the Mowers that it intended to exercise its rights under the deed of trust to accept State Farm's offer. The Mowers objected.

■ Faced with the conflicting desires of the two insured parties, First Federal and the Mowers, State Farm filed an interpleader action to request instruction from the court as to whom it should pay. The Mowers countersued State Farm claiming it had breached its contract by not paying total loss benefits, and that it had breached its duty of good faith and fair dealing. In 14 points of error, State Farm appeals from the jury verdicts against it on both issues.

In its first point of error, State Farm claims the trial court erred in entering judgment for the Mowers because there is no evidence or, alternatively, insufficient evidence that the Mowers' house was a total loss. When reviewing a "no evidence" point, an appellate court must consider only the evidence that tends to support the finding and disregard all evidence to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987). When reviewing a jury verdict to determine the sufficiency of the evidence, the appellate court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ In this case, the jury found that the Mowers' house was a total loss, which meant that State Farm would be responsible for total loss benefits of $175,000. The test for determining whether a building is a total loss by fire depends upon whether a reasonably prudent uninsured owner, desiring to rebuild,

would have used the remnants for restoring the building. *Glens Falls Ins. Co. v. Peters,* 386 S.W.2d 529, 531 (Tex.1965). Neither of the Mowers testified at trial about whether they would use the remnants to rebuild. The only witnesses they called to testify were Barnhill and Philleaux.

■ The Mowers assert that the jury verdict of total loss is justified because Barnhill determined that the structure was a total loss when he initially inspected their house. The Mowers also relied on the testimony of Philleaux to support their total loss claim. Philleaux testified that, "it looks like there was severe damage to the building," and that if it had been his house, he would have thought his house had burned down. He also stated that the cost of repairing a piece of property did not pertain to whether or not it was a total loss under the policy. Both Hudnall and Stewart stated that they would use the original slab in their estimates to rebuild; however, Hudnall said he would not guarantee the slab after the fire. Clearly, there was some evidence to support the jury's finding. The real issue then is whether or not there was sufficient evidence to support the jury's finding that the house was a total loss. Although there is conflicting evidence in the record, we find that there is sufficient evidence to support the jury finding. When deciding "insufficient evidence" the court must review all the evidence, including that contrary to the finding, and decide whether the judgment is so against the great weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–635 (Tex.1986). As stated above, the entire body of evidence has been evaluated and the verdict is not so against the great weight as to be manifestly unjust. We overrule State Farms' first point of error.

■ State Farm asserts in its second and third points of error that the trial court erred by excluding Philleaux's testimony that the Mowers' garage and slab were part of the "structure" covered by the homeowner's policy, and by denying State Farm's request to

instruct the jury that the slab and garage were part of the "structure" inquired about in jury question number one. In reviewing a trial court's refusal to submit a requested instruction, it will be reversible error only if in light of the totality of the circumstances, the denial amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986).

■ Case law clearly holds that the foundation of a building is part of the structure, and is to be included as such in insurance policies unless otherwise indicated. *Forrester v. New York Underwriters Ins. Co.*, 52 S.W.2d 233, 234 (Tex.Comm'n App.1932, holding approved). The same is true of garages. *Nicholson v. First Preferred Ins. Co.*, 618 S.W.2d 560 (Tex.Civ.App.—Amarillo 1981, no writ). At trial, however, the Mowers' attorney consistently urged through questioning that the slab and garage were not part of the structure. State Farm requested that the court either instruct the jury that the slab and garage were covered by the insurance policy or allow Philleaux to testify to the fact. The court denied both requests.

■ The exclusion of evidence must be viewed under an abuse of discretion standard. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985). To obtain a reversal based on this exclusion, State Farm must first show the trial court's decision was error, and second, that the error was calculated to cause and probably did cause the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989).

■ In this case, the jury was able to review the insurance policy and photographs of the Mowers' slab and garage. There was no evidence that the slab and garage were not covered by the policy. Additionally, the jury was allowed to hear the testimony of State Farm's witness, Oren Hudnall. Mr. Hudnall testified that he would use the slab and the garage to rebuild the Mowers' home.

Because Hudnall testified that he would use the slab and garage, Philleaux's excluded testimony was only cumulative of other evidence that the slab and garage were indeed covered under the Mowers' policy. The trial court's refusal to allow State Farm's cumulative evidence was not error.

■ State Farm also submitted a written request to the court for an instruction that would inform the jury the slab and garage were part of the structure. The court refused this request. Rule 277 of the Texas Rules of Civil Procedure requires a court to submit instructions and definitions that are proper to enable a jury to render a verdict. TEX.R.CIV.P. 277. Although the trial court is given discretion in submitting instructions and definitions, it must explain to the jury any legal or technical terms. *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 628 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ This Court has declared that special instructions are authorized *only* when it is *necessary* to enable the jury to properly pass upon and render a verdict on the special issues. *Badger v. Symon*, 661 S.W.2d 163, 165 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). The trial court has considerable discretion in deciding what definitions and instructions are necessary and proper in submitting issues to the jury, and the standard of review is one of abuse of discretion. *Green Tree Acceptance, Inc. v. Combs*, 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied); *Hamblet v. Coveney*, 714 S.W.2d 126, 129 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). A trial court has considerably more discretion in submitting instructions and definitions than it has in submitting special issues. *See Brown v. Tucker*, 652 S.W.2d 492, 496 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). In deciding whether there has been an abuse of discretion, a court of appeals may not

substitute its judgment for that of the trial court. Rather, the court of appeals must decide only whether the trial court's action was arbitrary or unreasonable. *K–Mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632, 641 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The trial court submitted the following question and instruction to the jury in the first trial:

### Question No. 1

Was the structure a total loss after the fire on March 16, 1986?

You are instructed that a structure is a "total loss" if a reasonably prudent owner, uninsured, desiring a structure such as the one in question was before injury, would not have used the remnants of the structure as the basis to rebuild.

Answer "Yes" or "No"

Answer: Yes

During the first trial, the Mowers introduced the following into evidence: the contract of insurance covering the Mowers' home; photographs of the burned-out structure taken shortly after the fire; and photographs of home after the slab had been cleared of the home's charred remains. No witness testified that the insurance contract did not cover the home's slab and garage.

In light of that undisputed evidence, State Farm's requested instruction would not have helped the jury to understand the meaning and effect of the law. *Hamblet,* 714 S.W.2d at 129. Any possible error did not amount to a denial of State Farm's rights that was reasonably calculated to cause and did cause the rendition of an improper judgment. *Island Recreational Dev.,* 710 S.W.2d at 551. We overrule State Farms' second and third points of error.

Appellants' first three points of error pertain only to the first trial, where the sole issue was the contract question of whether the Mowers' home was a total loss. Appel-

lants' remaining points are concerned with the second trial, where the issue was whether State Farm had any reasonable basis for denying or delaying its payment under the policy.

Appellant's fourth point of error asserts that there is no evidence that State Farm breached the duty of good faith and fair dealing. In reviewing a no evidence point of error, we will view the evidence in the record in a light which tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support the finding of the disputed fact, the point of error must be overruled. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). Therefore, we must examine the record to determine whether some evidence exists to support the fact in issue, namely, whether State Farm acted in bad faith by denying or delaying its payment to the Mowers.

The jury heard evidence concerning the inspection by the adjuster for State Farm and his opinion that the house was a total loss. They also heard about the delay in payment and the ultimate less than total loss payment to the lien holder. The Mowers testified to the general condition of their home, and State Farm's decision not to pay total loss. Simply, there was some evidence to raise an issue of whether State Farm had a reasonable basis to deny the total loss claim.

Accordingly, we overrule appellant's fourth point of error.

In its seventh point of error, State Farm asserts that the court committed reversible error in the bad faith trial by preventing State Farm from showing its reason for concluding the home was not a total loss. Insurance carriers maintain the right to deny invalid or questionable claims with-

out being subject to liability for erroneous denials of claims. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex. 1988). A bona fide controversy is a sufficient reason for failure of an insurer to make a prompt payment of a loss claim. *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 780 S.W.2d 417, 426 (Tex.App.—Texarkana 1989), *aff'd,* 811 S.W.2d 552 (Tex.1991).

The plaintiff in a bad faith cause of action must prove that the insurer had no reasonable basis for denying a claim or delaying payment, or that it failed to determine whether there was any reasonable basis for denying or delaying payment. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). The plaintiff must establish "the absence of a reasonable basis for denying or delaying payment of the benefits of the policy" and that the carrier knew or should have known that there was no reasonable basis for denying or delaying payment. *Aranda,* 748 S.W.2d at 213. Thus, the bad faith cause of action requires much more demanding proof than the suit on the insurance policy. *State Farm Lloyds, Inc., v. Polasek,* 847 S.W.2d 279, 283 (Tex.App.—San Antonio 1992, writ requested).

This means that the plaintiff must prove that there were no facts before the insurer which, if believed, would justify the denial of the claim.

> This determination to deny the claim is not to be based on the insurer's success or failure in court on liability for the claim. The denial may be erroneous and still in good faith if it is based upon the information which was available to the insurer at the time of the denial and which supported the denial of the claim. When there is a bona fide controversy, the insurer has a right to have his day in court and let the jury determine each witness's truthfulness.

*St. Paul Guardian Life Ins. Co. v. Luker,* 801 S.W.2d 614, 621–22 (Tex.App.—Texarkana 1990, no writ).

In the bad faith action brought by the Mowers, the issue was whether there were facts State Farm had which reasonably led it to believe that the home was not a total loss. The issue is not whether State Farm correctly evaluated those facts. *Id.* At the trial, State Farm called two witnesses, both contractors, to establish that at the time State Farm made its decision that the Mowers' home was not a total loss, it had in its possession bids from two experts that showed the home could be rebuilt for less than the policy limits, and that both the slab and the garage were usable remnants and would be used for rebuilding. This testimony went to the central issue of the bad faith claim, whether State Farm had any reasonable basis for denying payment for total loss under the policy. The court refused to permit this evidence.

For the exclusion of evidence to constitute reversible error, State Farm must show (1) that the trial court committed error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992). "Such a determination necessarily is a judgment call entrusted to the sound discretion and good senses of the reviewing court." *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818, 821 (Tex.1980). The complaining party is only required to show that the exclusion of evidence probably resulted in the rendition of an improper judgment. *McCraw,* 828 S.W.2d at 758; *Stern v. Wonzer,* 846 S.W.2d 939, 947 (Tex.App.—Houston [1st Dist.] 1993, no writ); Tex.R.App.P. 81(b)(1).

Because the only issue in the Mowers' bad faith claim was whether State Farm had any reasonable basis for denying or delaying payment, it was error to exclude the evidence that demonstrated and defined the basis of State Farm's decision. State Farm had a right to present the expert testimony that State Farm had two bids which not only would have rebuilt the home for less than policy limits, but which clearly called for the

use of the slab and garage in the rebuilding. The existence of usable remnants was the basis of the dispute on whether or not the home was a total loss. By excluding such evidence, the trial court committed reversible error.

We sustain State Farm's seventh point of error

Because of our ruling on the seventh point of error, it is unnecessary to address points of error five, six, eight, nine, 10, 11, 12, 13, and 14.

The judgment awarding damages concerning the cause of action for lack of good faith and fair dealing is reversed, and that cause is remanded to the trial court.

COHEN, J., dissents.

COHEN, Justice, dissenting opinion on motions for rehearing[1].

I agree that State Farm's seventh point of error should be sustained, but I would also sustain State Farm's fourth point of error and hold there is no evidence that State Farm breached the duty of good faith and fair dealing. Thus, I would render judgment that the Mowers take nothing from State Farm on their bad faith claim.

State Farm's alleged bad faith was refusing to pay $175,000 for a "total loss," even though the two repair bids averaged approximately half that amount. The Mowers presented no evidence showing how much more than State Farm's $90,000 offer it would have cost to construct a guaranteed slab. Absent some proof that constructing a guaranteed slab would have cost an additional $85,000 (the difference between the $175,000 face value of the insurance policy and State Farm's offer of $90,000), I see no evidence that State Farm acted in bad faith by refusing to offer $175,000.

As the majority holds, both foundations and garages are, as a matter of law, parts of the insured structure. Every contractor who bid proposed to use those remnants to rebuild. No witness stated the remnants were unusable. How, then, can it be said that State Farm acted in bad faith by proposing to use the remnants?

A building is a "total loss" if a reasonable uninsured owner, desiring to rebuild, would not have used the remnants to restore the building. *Glens Falls Ins. Co. v. Peters,* 386 S.W.2d 529, 531 (Tex.1965). State Farm apparently believed that a reasonable uninsured owner would use the remnants. All the evidence suggests there was a reasonable basis for this belief, even though it was also to State Farm's economic advantage to hold that belief. The Mowers believed the opposite, even though it was clearly to their economic advantage to hold that belief. Every disagreement between an insurer and an insured, however, is not evidence of bad faith. Given the unanimous judgment of the contractors to use the remnants to rebuild, I believe State Farm's action was reasonable, as a matter of law, even if the jury found it to be erroneous. There is plenty of evidence here of a good faith disagreement, but I see none of bad faith disagreement. To the majority's conclusion that this reasonable disagreement constitutes legally and factually sufficient evidence of bad faith, I respectfully dissent.

On original submission, I joined the majority's decision to overrule point of error one, which held there was legally and factually sufficient evidence of "total loss." Upon reconsideration, I would sustain it. No witness stated that a reasonable uninsured owner would not have used the remnants to rebuild. Every contractor who testified would have used them. Although neither contractor would have guaranteed the foundation, both would have used it. An unguaranteed foundation is not worthless; it is just worth less than a guaranteed foundation. Nevertheless, I concede that the jury could have concluded that a reasonable owner would not have used the foundation to rebuild because it was not good enough to guarantee. A reasonable

---

1. My opinion of December 9, 1993 is withdrawn, and this is substituted for it.

uninsured owner could refuse to accept such a foundation. Thus, if the foundation were the only remnant in question, I would still vote to overrule point one. There is another remnant, however, the garage. Nobody testified the garage could not be used to rebuild or that it could not be guaranteed. Thus, there is uncontradicted expert testimony that the garage could be used and none that it could not. In my opinion, that constitutes conclusive evidence that the structure was not a "total loss." *See Mack v. Moore*, 669 S.W.2d 415, 418–19 (Tex.App.—Houston [1st Dist.] 1984, no writ) (expert testimony that is uncontradicted, unimpeached, and consistent may be given conclusive effect on a subject on which the jury must be guided by testimony of experts.)

I would sustain points of error one and four and render judgment that appellees recover the amount of the higher bid (Hudnall's), $88,139.00.

