**STATE FARM FIRE & CASUALTY COMPANY and State Farm Lloyds, Petitioners,**

v.

**Ronald and Marilyn MOWER, Respondents.**

No. 94–0558.

Supreme Court of Texas.

Dec. 22, 1995.

Tynan Buthod, Houston, George T. Shipley, Houston, for Petitioners.

Raphaell V. Wilkins, Houston, Kirk Purcell, Houston, Larry Zinn, San Antonio, for Respondents.

PER CURIAM.

The dispositive issue in this case is whether any evidence was adduced at trial to support the verdict that Ronald and Marilyn Mower's home was so damaged by fire that it was a "total loss", as that term is defined by law. A divided court of appeals held there was. 876 S.W.2d 914. We disagree.

The Mowers insured their home with State Farm Fire and Casualty Company for $175,000. After it burned, State Farm hired an independent adjuster to investigate the loss. Only the foundation and about 85% of the garage remained. The adjuster concluded, before any repair estimates could be made, that the cost of reconstructing the home would exceed the amount of coverage. He also believed that the remnants could be used in rebuilding.

The Mowers solicited two reconstruction bids, one from the original builder, for $88,139, and the other from a builder who specialized in rebuilding fire-damaged homes, for $85,900. Both bids expressly stated that the garage and slab foundation would be used in reconstruction, although the original builder would not guarantee the slab. When the adjuster learned of these bids, he concluded that the Mowers' home was not a total loss after all and recommended that State Farm pay the Mowers the amount of the higher bid, plus minor additional expenses. State Farm twice offered the Mowers $90,000, but they demanded $104,000, the payoff on their mortgage. The mortgagee, also an insured under the policy, informed the Mowers that it would accept State Farm's offer if they did not.

Facing conflicting demands from the Mowers and their mortgagee, State Farm filed this interpleader action. The Mowers counterclaimed, alleging that they were entitled to the coverage limits under the policy because their home was a total loss. The Mowers also alleged that State Farm's refusal to pay the $175,000 policy limits was a breach of its duty of good faith and fair dealing which had caused them to suffer mental anguish, for which they were entitled to actual and punitive damages. The jury found that the Mowers' home was a total loss, that State Farm had breached its duty of good faith and fair dealing, that the Mowers had suffered mental anguish worth $50,000, and that punitive damages should be assessed against State Farm in the amount of $5 million. The trial court rendered judgment on the verdict. The court of appeals affirmed the award of

$175,000 under the policy, but reversed the judgment on the bad faith claim and remanded it for a new trial because the trial court had erroneously excluded evidence offered by State Farm in its defense. 876 S.W.2d 914. The Mowers and State Farm all appealed to this Court.

For nearly a century we have consistently defined "total loss" as follows:

> [T]here can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis....

*Royal Ins. Co. v. McIntyre*, 90 Tex. 170, 37 S.W. 1068, 1074 (1896); *accord Glens Falls Ins. Co. v. Peters*, 386 S.W.2d 529, 531 (Tex. 1965). The court of appeals acknowledged this test but applied it incorrectly to the evidence in this case.

 The Mowers argue that the adjuster's initial conclusion that the cost of reconstructing their home would exceed policy limits is some evidence that it was a total loss. But the adjuster's conclusion, even if it had turned out to be right, does not meet the legal test for total loss. The Mowers also argue that the State Farm employee with responsibility for their claim testified that the house appeared to have sustained severe damage and that if it had been his house, he would have thought it had burned down. Again, this testimony does not speak to the legal standard of whether there were remnants usable in reconstruction. The only evidence in the case, from the two bids the Mowers obtained, is that the foundation and garage would be used in rebuilding the house. Even if a reasonably prudent owner would not rebuild a house with a foundation that could not be guaranteed, the evidence in this case is undisputed that the garage would be used in reconstruction. There is no evidence that a reasonably prudent owner in the Mowers' shoes would not have used the remnants to rebuild their house. There was thus no evidence that the Mowers' home was a total loss; indeed, the uncontradicted evidence established that the home was not a total loss. The Mowers were entitled to recover under their policy only the $90,000 required to rebuild their home.

Inasmuch as the Mowers' home was not a total loss, State Farm had a reasonable basis for denying the Mowers' claim for the limits of their policy. The Mowers' only contention that State Farm's offer of $90,000 was made in bad faith apart is that State Farm should have paid for a total loss. Consequently, State Farm did not breach its duty of good faith and fair dealing. The court of appeals should have rendered judgment for State Farm on the Mowers' bad faith claim.

Accordingly, a majority of the Court, without hearing oral argument, denies the Mower's application for writ of error, grants State Farm's application for writ of error, reverses the judgment of the court of appeals, and remands the case to the trial court for rendition of judgment in accordance with this opinion. TEX.R.APP.P. 170.