

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00186-CV

_____

EDGAR WASHINGTON, FLORENCE HILL, AND CHRISLYN HILL, Appellants

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND
CHRYSLER CAPITAL LLC, Appellees

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-304035-18

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

After a drunk driver struck their parked car, Appellants Edgar Washington, Florence Hill, and Chrislyn Hill—proceeding pro se—sued Appellees State Farm Mutual Automobile Insurance Company (the drunk driver's insurance company) and Chrysler Capital LLC (the lienholder on Appellants' vehicle). The trial court granted State Farm's and Chrysler Capital's motions for summary judgment, and Appellants appealed. In their pro se brief, Appellants assert six issues with numerous complaints. We hold that Appellants have not shown error and affirm the trial court's judgments.

## II. BACKGROUND

### A. Appellants' Live Pleading

According to Appellants' "Amended Complaint – Number 3," in late October 2016, while driving under the influence of alcohol, Kyle Coleman drove into their parked vehicle, a 2012 Honda Civic, pushed it over a curb, and crashed it into four other parked vehicles. Police later impounded the Honda.

As further alleged in the pleadings, Chrislyn, a co-signer on the Honda's note and the vehicle's primary driver, now found herself without transportation.[1] Edgar,

---

[1]Because Florence Hill and Chrislyn Hill share the same surname, and because Kyle Coleman and Monte Coleman, who is referenced below, also share the same surname, we refer to them by their first names to avoid confusion. And to be consistent, we refer to Edgar Washington by his first name too. *See In re Guardianship of Jones*, No. 20-0439, 2021 WL 4228048, at *1 n.1 (Tex. Sept. 17, 2021).

Chrislyn's stepfather and the other co-signer on the note, found himself with a severely damaged car and, assuming payments on the car were stopped, a threat to his credit. Florence, Chrislyn's mother and Edgar's spouse, worried about her daughter's well-being.

Appellants notified their vehicle's lienholder, Chrysler Capital, that their Honda had been damaged, was undriveable, and had been impounded by the police. According to Appellants, Chrysler Capital gave them no instructions about whether it expected them to continue making payments or about what would happen if they stopped making payments.[2]

The vehicle that Kyle drove was owned by his father, Monte Coleman, and insured by Monte's insurance company, State Farm.[3] According to Appellants, State Farm had "accepted liability" for all five damaged vehicles.

A State Farm adjuster met with Appellants, and Edgar signed a release and gave it to the adjuster with the understanding that the adjuster would give the release to Copart Towing Company so that State Farm could move the Honda to its salvage

---

[2]Appellants' complaint stopped short of stating how they resolved this dilemma, but they provided the answer indirectly when later acknowledging that Chrysler Capital had "retrieved the vehicle from the police impound." In Chrysler Capital's answer and counterclaim, it alleged that Edgar and Chrislyn had breached their retail installment sales contract when they stopped making monthly payments.

[3]Appellants named Monte as a defendant in their first complaint but thereafter dropped his name from their subsequent complaints; by doing so, they effectively dismissed any claims they had against him. *See Spellmann v. Love*, 534 S.W.3d 685, 690 (Tex. App.—Corpus Christi 2017, pet. denied).

yard for inspection. Edgar and Florence asserted that thereafter State Farm representatives had assured them on multiple occasions that State Farm had taken possession of the Honda and that the Honda was in State Farm's salvage yard. According to Edgar and Florence, however, those assurances proved false. They maintained that the Honda had been accumulating daily impound fees because Chrysler Capital had delayed taking action; they asserted that Chrysler Capital had only "retrieved the vehicle from the police impound to avoid the 45[-]day auction rule."

According to Appellants, because of State Farm's mismanagement, all three of them—as well as three other individuals in their household—were without transportation. Initially, they resorted to renting cars, but eventually they purchased another vehicle to replace the Honda. They maintained that these new expenses caused them undue financial hardships.

Meanwhile, after Chrysler Capital retrieved the Honda from the police impound, it designated the Honda's status as "repo/totaled" and demanded a property-damage payment from State Farm. State Farm promptly paid. According to Appellants, Chrysler Capital then turned around and filed a claim with Appellants' insurance carrier for nonpayment, but their insurance carrier denied Chrysler Capital's demand.

Appellants maintain that State Farm had paid Chrysler Capital $3,624.53 and then closed the claim, leaving them without any remedy for their loss of

4

transportation or for their mental and physical damages. State Farm informed Appellants that they could retrieve the "repairable" Honda from Manheim Auction in Dallas by paying the impound and any other applicable fees, but according to Appellants, this constituted "conspiratorial and erroneous actions" that caused "harmful personal injury" to them. Appellants maintained that State Farm and Chrysler Capital had conspired to benefit themselves to Appellants' detriment and noted that State Farm had listed the Honda as totaled for Chrysler Capital's purposes but as repairable for Appellants' purposes.[4]

Not all of Appellants' complaints went unheeded. After Appellants filed a complaint with the Texas Department of Insurance, State Farm paid the Honda's impound fees.

All three Appellants maintained that they were legally disabled and that the stress of this matter had exacerbated Florence's disability and had resulted in trips to the emergency room, surgery, and the "loss of an organ." As for Edgar, Appellants averred that he was "very overwhelmed by this entire matter (worsening his health as

---

[4]A repairable vehicle and a totaled vehicle are not necessarily mutually exclusive. "Totaled" vehicles are those for which repairs would be too costly compared to the vehicle's value. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 564 (Tex. App.—Tyler 2007, pet. denied) (op. on reh'g); *see State Farm Fire & Cas. Co. v. Mower*, 917 S.W.2d 2, 4 (Tex. 1995). A "total loss" occurs in those situations where a reasonably prudent uninsured owner, desiring to restore the property to its pre-incident condition, would not utilize that property for such restoration. *Canal Ins. Co.*, 238 S.W.3d at 564. Generally, a reasonably prudent uninsured owner would not repair a vehicle when the repair costs exceeded the vehicle's pre-incident fair market value; therefore, a "totaled" vehicle would also be a "total loss." *Id.*

witnessed and documented)." Finally, having no means of transportation, Appellants lamented that their entire holiday season had been ruined.[5]

Thereafter, Manheim Auction in Dallas sold the Honda at auction without changing the vehicle registration. The failure to change the vehicle registration meant that when the Drug Enforcement Administration later linked the Honda to a sting operation, DEA agents traced the Honda back to Appellants, who quickly found themselves targeted as suspected drug dealers. After "getting the necessary documents to [the] DEA," Appellants successfully warded off the DEA's suspicions but not without cost; they averred that the event distressed, humiliated, and degraded them.

Framing their complaints in terms of cognizable causes of action, Appellants alleged that State Farm and Chrysler Capital were negligent and grossly negligent and were liable for the intentional infliction of emotional distress. As a result of the actions described in their pleadings, Appellants sought the following damages:

(1) $25,000 from Chrysler Capital to cover "the cost of an unplanned vehicle purchase";

(2) $2,500 each from Chrysler Capital for damages to their credit ratings;

(3) $2,500 each from Chrysler Capital for being "unethically mistreated as customers";

---

[5]Because the accident occurred in late October 2016, Appellants appeared to be referring to their 2016 holiday season.

(4) $25,000 from State Farm for its "mishandling of said insurance claim, mistreatment and total inconsideration of [Appellants'] hardships";

(5) $54,000 for Edgar and $50,000 for Florence from Chrysler Capital due to their "insurance claim of bodily injury and property damages being 'irreparably' and 'egregiously' harmed";

(6) $10,000 each from State Farm for their "pain and suffering";

(7) $5,000 each from State Farm for its "failure of standard duty" while handling the insurance claim;

(8) $54,000 for Edgar and $50,000 for Florence from State Farm due to their "insurance claim of bodily injury and property damages being 'irreparably' and 'egregiously' harmed";

(9) $5,000 each from Chrysler Capital for its "failure of standard duty"; and

(10) punitive damages from State Farm and Chrysler Capital for the "serious and adverse altering of [Appellants'] quality of life and health."

## B. Chrysler Capital's claims against Edgar and Chrislyn

In addition to Appellants' claims against State Farm and Chrysler Capital, Chrysler Capital had claims against Edgar and Chrislyn. But Chrysler Capital's claims against them took a circuitous and somewhat convoluted route.

Initially, Chrysler Capital filed a counterclaim against Edgar and Chrislyn for breach of the retail installment sales contract. At the time, though, Chrislyn was not yet a plaintiff. Technically, Chrysler Capital could not file a counterclaim against Chrislyn. *See* Tex. R. Civ. P. 97 (A "counterclaim" is a claim "against any opposing party[.]"); *Complaint/Counter-Complaint*, Black's Law Dictionary (11th ed. 2019).

7

Recognizing its error, Chrysler Capital later sought and was granted leave to file a third-party claim against Chrislyn for breach of the installment contract. Chrislyn's nomenclature went from a counter-defendant to a third-party defendant. *See* Tex. R. Civ. P. 38; *Complaint/Third-Party Complaint*, Black's Law Dictionary (11th ed. 2019).

But shortly thereafter, Edgar and Florence filed their third complaint and added Chrislyn as a plaintiff. Thus, a few weeks later, Chrysler Capital again filed a counterclaim against Edgar and Chrislyn for breach of the sales contract.

## C. State Farm's and Chrysler Capital's Motions for Summary Judgment

State Farm's and Chrysler Capital's motions for summary judgment disposed of Appellants' claims against them in two steps.

### 1. Step One

First, in January 2019, State Farm filed a traditional motion for summary judgment based on Texas not being a direct-action state. State Farm argued that "[r]egardless of the nature of the relief sought, a suit brought directly against an insurer before liability has been determined is subject to dismissal." *See In re Essex Ins. Co.*, 450 S.W.3d 524, 526–28 (Tex. 2014) (orig. proceeding). State Farm elaborated that "[i]n Texas, an injured party generally has no direct claim against the tortfeasor's insurer until the insured tortfeasor is determined liable to the tort claimant." *See State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989); *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969) (orig. proceeding). In support of State

8

Farm's motion, it relied on the pleadings—Appellants' complaint and State Farm's answer.

In May 2019, the trial court granted State Farm's motion in part and denied it in part. The trial court (1) granted summary judgment against Appellants on their claims based on the damages that Kyle caused the Honda, and (2) denied summary judgment on Appellants' claims based on State Farm's conduct while handling Appellants' claims.

## 2. Step Two

Second, in February 2020, State Farm filed a traditional and no-evidence motion for summary judgment. Also in February 2020, Chrysler Capital filed a traditional and no-evidence motion for summary judgment.

In May 2020, the trial court granted both State Farm's and Chrysler Capital's motions. Appellants' claims against State Farm were "denied in their entirety and [were] dismissed with prejudice." In similar fashion, Appellants were ordered to take nothing from Chrysler Capital, and their causes of action against it were dismissed with prejudice.

## III. Finality

After the trial court granted State Farm's and Chrysler Capital's motions for summary judgment in May 2020, Appellants filed their notice of appeal. The trial court—concerned that the judgment might be interlocutory—asked the parties to address finality. State Farm responded that Appellants' claims against Kyle—who had

9

been named in Appellants' complaints but who had never been served—had been effectively discontinued, and Chrysler Capital responded by filing a motion to nonsuit its counterclaim against Edgar and Chrislyn. A day after Chrysler Capital filed its motion to nonsuit, the trial court granted it.

On appeal, State Farm—perhaps anticipating challenges to the judgment's finality—addressed that issue in its brief and concluded that the judgment was final. "Whether a judgment is final impacts jurisdiction . . . ." *Shetewy v. Mediation Inst. of N. Tex., LLC*, 624 S.W.3d 285, 287 (Tex. App.—Fort Worth 2021, no pet.).

Appellate courts are obligated to review sua sponte issues affecting jurisdiction. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). "[F]inality is . . . a legal question that we review de novo." *Shetewy*, 624 S.W.3d at 287. Because Appellants' judgment was not the product of a conventional trial on the merits, for the judgment to be final, it must dispose of all the claims of all the parties. *See In re A.S.*, No. 02-18-00400-CV, 2019 WL 5996981, at *2 (Tex. App.—Fort Worth Nov. 14, 2019, no pet.) (mem. op.).

State Farm's May 2019 and May 2020 summary judgments and Chrysler Capital's May 2020 summary judgment disposed of Appellants' claims against them. These summary judgments, however, did not produce a final judgment. State Farm's May 2019 and May 2020 summary judgments did not have any language suggesting that the court intended to dispose of all the claims of all the parties. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001) ("A statement like, 'This judgment

10

finally disposes of all parties and all claims and is appealable', would leave no doubt about the court's intention."). In contrast, Chrysler Capital's May 2020 summary judgment had the word "final" in its title and contained a Mother Hubbard clause (a clause denying all other relief not expressly granted). *Id.* at 192. But because the summary judgment was not the product of a conventional trial on the merits, neither the "final" in the title nor the Mother Hubbard clause made the judgment final. *See id.* at 205 ("An order does not dispose of all claims and all parties merely because it is entitled 'final', or because the word 'final' appears elsewhere in the order . . . ."); *id.* at 206 ("The Mother Hubbard clause proved to give no indication of finality not just because it found its way into every kind of order, but because it was inherently ambiguous . . . ."); *see also A.S.*, 2019 WL 5996981, at *2.

In the trial court's finality inquiry, it specifically asked about Kyle. In Appellants' third complaint, they identified three defendants: (1) Kyle, (2) State Farm, and (3) Chrysler Capital. State Farm responded that Kyle had never been served and had never appeared, so the Appellants' claims against him had effectively been discontinued. We agree. So far as can be determined from the record, Kyle was never served with citation and did not answer, and there is nothing to indicate that Appellants ever expected to obtain service on him. In these circumstances, the case stands as if there had been a discontinuance as to Kyle. *See Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962); *Slater v. Nat'l Med. Enters.*, 962 S.W.2d 228, 232 (Tex. App.—Fort Worth 1998, pet. denied); *see also* Tex. R. Civ. P. 161.

11

Chrysler Capital responded to a second finality concern—its counterclaim against Edgar and Chrislyn—by filing a motion to nonsuit. The trial court promptly granted the motion, and no other claims or parties remained.

We conclude that the judgment is final.

## IV. DISCUSSION

On appeal, Appellants raise six issues:

(1) they attack the trial court's May 2019 summary judgment:

> The 67th District Court abused its discretion when it failed to give a fair and 'final judgment ruling', based on Appellants' facts and law, with the DENIAL of Appellee State Farm's Traditional Motion for Summary Judgment hearing in May of 2019, where Appellee Chrysler Capital LLC '**fully**' agreed with State Farm's Traditional Motion for Summary Judgment for dismissal of the case. This said Court also ruled against giving 'anymore' time to any parties on the case[;][6]

(2) they contend that the trial court abused its discretion by not taking judicial notice of newly discovered evidence:

> The 67th District Court abused its discretion when it failed to hear and rule on Appellants' Motion for Judicial Notice that exposed **newly discovered** medical evidence for Appellant Edgar Washington at a deposition held in Dec 2019, in which medical symptoms were exacerbated by Counsel for Chrysler Capital LLC, (Derek Feibel), due to the unprofessional 'and' unlawful conduct of his[;]

(3) they complain about the trial court's failure to send their case to mediation:

> The 67th District Court abused its discretion by its failure to Order all parties to mediation, as requested by the Appellants, agreed to by presiding court Judge Cosby, and not objected to by said Appellees'

---

[6]We have made no attempt to edit the six quoted issues.

12

counsel present at a Nov 2019 hearing, for resolution of said case, further delaying and harming Appellants' case[;]

(4)(a) under the sections entitled, "Statement of the Facts" and "Argument and Authorities for Judgment," Appellants allege in their fourth issue that a court coordinator forged the trial judge's signatures on the May 2020 summary judgments:

> The Appellants allege that the Final Summary Judgment Orders were 'not' signed by the 67th Court Judge (due to the 'appearance' of alleged **forgery** by the 348th & 67th Court Coordinators Michele Rayburn & Becky Holland, on said Orders instead of the ruling authority Judge Cosby, and both Coordinators also 'coincidentally' ceased employment within the same time-frame)[;]

(4)(b) but under another portion of Appellants' brief entitled, "Issues Presented," they assert as their fourth issue that the trial court erred by ruling on State Farm's and Chrysler Capital's motions for summary judgment without a hearing:

> The 67th District Court abused its discretion by 'apparently', yet 'questionably' dismissing '**all claims**' against Appellees State Farm and Chrysler Capital, LLC 'with prejudice' in May, 2020, without the benefit of the Appellants being heard on the matter at a Final Judgment hearing, violating Appellants' rights to due process to be heard, their 'trust' in the judicial integrity and competence in their case, 'and' **equal protection** of the law[;]

(5) they argue that the trial court abused its discretion by not granting their post-judgment motions:

> The 67th District Court abused its discretion by failing to Grant Appellant's Motions to Vacate Judgment or Motion for Reconsideration based on issues raised by said motions, in the interest of 'goodness & fairness', especially considering MAJOR 'unlawful' errors made by Appellees State Farm & Chrysler Capital, LLC with regards to the handling of the insurance claim[;]

13

and

(6) they maintain that the trial court—exhibiting racial prejudice—abused its discretion by not filing findings of facts and conclusions of law:

> The 67th District Court abused its discretion by failing to respond with findings and/or grounds after (3) requests for 'Finding of Facts and Conclusions of Law' were filed by the Appellants, making it difficult to understand the Court's Final Judgment granted in 'full favor' of the Appellees, showing the 'full' **appearance** and **maltreatment** of 'racial' bias & prejudice against a civil case (with merit) as presented by all African-American Appellant *pro se* litigants.

For the reasons given below, we hold that Appellants have not shown reversible error.

## A. The May 2019 Summary Judgment

In Appellants' first issue, they argue that the trial court erred to the extent that it granted State Farm's traditional motion for summary judgment and—to the extent the trial court denied State's Farm's motion—it did not enter judgment in their favor on the remaining claims. Appellants' first issue focuses strictly on the trial court's May 2019 summary judgment, in which the trial court granted State Farm's motion on all of Appellants' claims against State Farm based on Kyle's conduct because the no-direct-action rule applied[7] but denied State Farm's motion on all of Appellants'

---

[7]State Farm filed its motion for summary judgment when Appellants' "Amended Complaint – Number 1" was their live pleading. This complaint, like the later complaints, alleged that State Farm had "accepted liability" for all five vehicles. When the trial court ruled on State Farm's motion, "[Appellants'] 'Corrected' Amended Complaint – Number 2" was their live pleading. Like their first and third complaints, Appellants alleged that State Farm had "accepted liability" for all five damaged vehicles.

14

claims against State Farm based on State Farm's own conduct while resolving Appellants' insurance dispute with it, during which Appellants alleged that State Farm had mistreated and harmed them **"separate and apart"** from anything that Kyle had done.

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

### 1. The Denial

Appellants contend that to the extent the trial court denied State Farm's motion, the trial court's denial implicitly recognized that their claims had merit, so the trial court erred by not rendering judgment on those claims in their favor. However, a denial of a motion for summary judgment does not result in a disposition on the merits. *See Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 442 (Tex. App.—Dallas 1994, writ denied).

15

Although Appellants filed their own motion for summary judgment, and although they acknowledged that the trial court had denied it, apart from alleging that the trial court did not read their motion, they did not file a cross-appeal or argue why—even if it were true that the trial court did not read their motion—the trial court erred; their argument remained the same, that is, the natural consequence of denying State Farm's motion should have been the granting of theirs. *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996) ("When both parties move for summary judgment, the non-prevailing party may appeal both the prevailing party's motion as well as its own."). We will not raise issues on behalf of the parties. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990); *De Los Santos v. Heldenfels Enters., Inc.*, No. 08-19-00113-CV, 2020 WL 4782308, at *4 (Tex. App.—El Paso Aug. 18, 2020, no pet.); *Cantu v. Cantu*, 556 S.W.3d 420, 434–35 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Denying State Farm's motion meant that State Farm had not persuaded the trial court that State Farm had met its summary judgment burden; denying State Farm's motion did not mean that Appellants had persuaded the trial court that they had met their summary judgment burden.

### 2. The Grant

To the extent that the trial court granted State Farm's motion, Appellants contend that the trial court erred because State Farm had already acknowledged liability for all five vehicles that Kyle had damaged, so the no-direct-action rule did

not apply.[8]  But it does not follow that State Farm's acceptance of liability for the property damage to the Honda correlated to State Farm's acceptance of any liability to Appellants.

Appellants' underlying assumption is that the Honda that Kyle damaged belonged to them.  But Appellants' complaints consistently alleged and the summary-judgment evidence established that Chrysler Capital had repossessed the Honda.[9] And Appellants' complaints also consistently alleged and the summary-judgment evidence established that State Farm had paid a settlement to Chrysler Capital.[10]

---

[8]In Texas, the general rule is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment. *Essex Ins. Co.*, 450 S.W.3d at 525.

[9]In an affidavit supporting State Farm's later-filed traditional and no-evidence motion for summary judgment, State Farm alleged that Chrysler Capital had repossessed the vehicle:

> 20. On or about December 7, 2016, the vehicle was repossessed by the lienholder Santander/Chrysler Capital.
>
> 21. On December 8, 2016, Chrysler Capital advised [Appellants] they had their vehicle because [Appellants] broke promises in the agreement. Chrysler Capital further advised that they planned to sell the vehicle, but [Appellants] could purchase the vehicle back by paying the amount that they owed.

The name "Chrysler Capital" is a d/b/a; in its original answer, it identified itself as "Santander Consumer USA Inc. d/b/a Chrysler Capital."

[10]In the same affidavit supporting State Farm's traditional and no-evidence motion for summary judgment, State Farm confirmed that it had paid the lienholder. In the affidavit, a State Farm representative related,

17

To overcome the no-direct-action rule, Appellants had to show that State Farm had admitted that Kyle was obligated to pay damages to them. *See State Farm*, 768 S.W.2d at 723 (stating that when an insured and her insurer paid the claimant money without admitting liability for the claimant's release of all claims arising out of the accident, the claimant's assignee—the doctor who had treated the claimant for injuries sustained in the accident—could not show a judgment or agreement establishing that the insured was obligated to pay the claimant's damages). At best, Appellants alleged that State Farm had admitted that Kyle was obligated to pay Chrysler Capital for damages to the Honda.

### 3. Other Matters

Within this first issue, Appellants also complain about the trial court's giving State Farm and Chrysler Capital more time for discovery after having said earlier that it would not give any additional time. Appellants do not argue that they opposed

---

10. There have been several payments made by State Farm in connection with [Appellants'] vehicle. Enterprise was paid directly for a rental car for [Appellants]. Further, lienholder Santander was paid because they were the owner of the vehicle.

11. We believe Santander/Chrysler are essentially the same entity. Technically, the entity is "Santander Consumer USA, Inc. d/b/a Chrysler Capital"[] but is referred to in the claim file by the names noted.

State Farm also asserted that it had paid $695 to Enterprise on Appellants' behalf but had stopped paying for Appellants' rental car after Chrysler Capital repossessed the Honda.

granting more time. *See Boon-Chapman v. Patterson*, 625 S.W.3d 526, 529–30 (Tex. App.—Houston [14th Dist.] 2021, no pet.). To preserve a complaint for review, an appellant must make a timely motion or objection to the trial court that states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *Lopez v. Rocky Creek Partners, LLC*, 623 S.W.3d 510, 514 (Tex. App.—San Antonio 2021, no pet.); *see Boon-Chapman*, 625 S.W.3d at 529–30. Appellants have not shown that they have preserved this complaint for our review. *See* Tex. R. App. P. 33.1(a).

We overrule Appellants' first issue.

## B. Judicial Notice

In Appellants' second issue, they argue that the trial court erred by not taking judicial notice of newly discovered evidence. *See* Tex. R. Evid. 201. Appellants refer to their December 2019 "Motion for Judicial Notice" in which they alleged that Edgar had been badgered and bullied during his deposition to the point that Florence, who was present at the deposition, feared that her husband might suffer a heart attack. In their prayer to this "Motion for Judicial Notice," they asked the trial court to order their case to mediation, to consider sanctions, and to resolve their case quickly because the proceedings were compromising their health.

The trial court could not properly take judicial notice of what had happened at Edgar's deposition. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (stating that court

19

should not have taken judicial notice of testimony concerning disputed facts). The facts surrounding the deposition are subject to reasonable dispute, are not generally known within the trial court's territorial jurisdiction, and cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Tex. R. Evid. 201(b); *In re Allen*, 359 S.W.3d 284, 289, n.5 (Tex. App.—Texarkana 2012, orig. proceeding) (op. on reh'g) ("No judicial notice could have been taken of [the affidavit's] content because the content [explaining the justification for removing the child] was not a subject matter for judicial notice."). By not taking judicial notice, the trial court did not err.

We overrule Appellants' second issue.

## C. Mediation and Arbitration

In Appellants' third issue, they complain that the trial court did not send their case to mediation. Within this issue, they also address arbitration.

Our review of the clerk's record shows that (1) on September 26, 2019, Appellants filed a "Motion to the Court for Referral of the Above-Referenced Case for (ADR) Alternative Dispute Resolution"; (2) on November 13, 2019, Chrysler Capital filed a response to Appellants' motion in which it argued that the parties

20

should complete discovery before proceeding to mediation; and (3) Appellants filed a November 18, 2019 reply to Chrysler Capital's response.[11]

Thereafter, at a November 22, 2019 hearing, the trial court granted Appellants' motion for mediation but delayed mediation until after the parties had engaged in discovery. The trial court told Appellants that mediation would occur at least thirty days before trial. Appellants did not object to delaying mediation until after the parties had conducted discovery. *See Wheeler v. Greene*, 194 S.W.3d 1, 6–7 (Tex. App.—Tyler 2006, no pet.) ("If a party fails to obtain a ruling, error is not preserved and the complaint on appeal is waived. Here, since the record does not indicate that the trial court ever made a ruling on [the appellant's] motion for mediation, we hold that [the appellant] has failed to preserve error." (citation omitted)).

As of November 22, 2019, some of Appellants' claims had already been disposed of in the trial court's May 2019 summary judgment, so mediation was not needed for those claims. In February 2020, both State Farm and Chrysler Capital filed their traditional and no-evidence motions for summary judgment, and in May 2020, the trial court granted both motions. Thus, mediation was no longer needed for those claims. The summary judgments had effectively mooted the need for mediation on Appellants' remaining claims.

---

[11]As noted earlier, the prayer to Appellants' December 23, 2019 "Motion for Judicial Notice" asked the trial court to send the case to mediation, but the body of this motion does not mention mediation.

In Appellants' brief, they also cite arbitration authority, which, they note, is binding on the parties. Yet they make no reference to any contract containing a binding arbitration agreement. *See* Tex. R. App. P. 38.1(i). "A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). The record does not show a motion to compel arbitration or an order denying a request to have the case sent to arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021. These complaints appear for the first time on appeal. Therefore, Appellants have not preserved them for appellate review. *See* Tex. R. App. P. 33.1(a).

We overrule Appellants' third issue.

## D. Forged Signatures

In Appellants' fourth issue, they contend that a court coordinator forged the signatures on the summary judgments.[12] Appellants do not show us where they raised this complaint in the trial court and, therefore, have not preserved this complaint for our review. *See* Tex. R. App. P. 33.1.

---

[12]Although not articulated in Appellants' brief, they might have been referring to the use of stamped signatures. A judge's stamped signature is permissible and valid. *See In re Barber*, 982 S.W.2d 364, 367 (Tex. 1998) (orig. proceeding) ("[A] judge may sign a document by directing another person who is under the judge's immediate authority to affix the judge's signature using a rubber stamp.").

In addition to the general forgery allegation in their fourth issue, Appellants also contend that the trial court violated their constitutional rights by granting State Farm's and Chrysler Capital's traditional and no-evidence motions for summary judgment without a hearing. Appellants did not brief this contention at all. *See* Tex. R. App. P. 38.1(i). Not briefing an argument waives the complaint. *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 286 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

Regardless, trial courts may decide motions for summary judgment on submission without argument by counsel or the parties. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998); *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 692 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Guereque v. Thompson*, 953 S.W.2d 458, 465 (Tex. App.—El Paso 1997, pet. denied). "[T]he rule allowing for summary judgment when properly followed neither violates one's right to a jury trial, nor due process." *Crampton v. Comm'n for Lawyer Discipline*, 545 S.W.3d 593, 606 (Tex. App.—El Paso 2016, pet. denied).

We overrule Appellants' fourth issue.

**E. Postjudgment Motions**

In Appellants' fifth issue, they argue that the trial court abused its discretion by not granting their postjudgment motions (a "Motion for Reconsideration of Final Judgment, Granting . . . State Farm['s] . . . and Chrysler Capital['s] Traditional & No-Evidence Motions for Summary Judgment" and a "Motion to Vacate Judgment").

23

Relying on "goodness & fairness," Appellants refer to their earlier argument that when the trial court denied State Farm's traditional motion for summary judgment, that ruling should have translated into a judgment in their favor on the merits.

We review a trial court's denial of a motion for reconsideration for an abuse of discretion. *See Hermosillo v. K. Hovnanian Homes DFW, LLC*, 329 S.W.3d 181, 185 (Tex. App.—Dallas 2010, no pet.). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

As part of Appellants' first issue, we have already addressed this contention and ruled against Appellants. *See Hartford*, 882 S.W.2d at 442. We cannot conclude that the trial court ruled without regard to guiding rules and principles.

We overrule Appellants' fifth issue.

## F. Findings of Fact and Conclusions of Law

In Appellants' sixth issue, they maintain that the trial court abused its discretion by not filing any findings of fact and conclusions of law. The record shows that Appellants filed a request for findings of fact and conclusions of law and, later, a notice of past-due findings of fact and conclusions of law. The record also shows that the trial court denied both Appellants' request and notice, and in both orders, the trial court cited case law for the proposition that findings of fact and conclusions of law are inappropriate after a court renders a summary judgment. *See IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997); *Linwood v. NCNB Tex.*, 885 S.W.2d 102,

24

103 (Tex. 1994). The trial court is correct. *See IKB Indus.*, 938 S.W.2d at 441; *Linwood*, 885 S.W.2d at 103. Therefore, Appellants have not shown that the trial court abused its discretion.

Appellants also allege that the trial court exhibited racial prejudice. This allegation also lacks any record support. "Appellate grounds are the best way to attack adverse rulings; using adverse rulings as evidence of judicial bias is a harder sale." *Song v. Kang*, No. 02-18-00375-CV, 2020 WL 1808487, at *7 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.).

We overrule Appellants' sixth issue.

## V. CONCLUSION

Having overruled Appellants' six issues, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Delivered: October 28, 2021

25